O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JON VAN DYKE,<br><br>Plaintiff,<br><br>vs.<br><br>LIONS GATE ENTERTAINMENT, INC. etc., et al.,<br><br>Defendants. | CASE NO. SACV 13-454-JST (ANx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT LIONS GATE ENTERTAINMENT, INC.'S MOTION TO DISMISS** |

Before the Court is Defendant Lions Gate Entertainment, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint. (Mot., Doc. 16.) Plaintiff Jon Van Dyke opposed, and Lions Gate replied. (Opp'n, Doc. 18; Reply, Doc. 19). Having reviewed the papers and considered the arguments of counsel at the hearing, the Court GRANTS IN PART and DENIES IN PART Lions Gate's Motion.

**I. Background**

In January 2010, Van Dyke was employed as director of the media department of the Yorba Linda Friends Church (the Church). (First Am. Compl. ("FAC") ¶ 13, Doc. 12.) At that time, Brent Martz was Van Dyke's supervisor. (*Id.* ¶ 14.) On or about January 6, 2010, Defendant Friends Media entered into an agreement (the Agreement) with Van Dyke "to secure the rights to a screenplay" Van Dyke wrote. (*Id.* ¶ 15.)

Pursuant to the agreement, Martz was deemed to be a co-author of the screenplay and entitled to 50% of the compensation for it. (*Id.* ¶ 15.) Martz, however, allegedly did not make any "copyrightable (or other substantive)" contributions to the screenplay. (*Id.* ¶ 15.) Van Dyke further alleges that Martz was in a position to, and in fact did, exercise undue influence and/or coercion on Van Dyke in connection with the execution of the Agreement. (*Id.* ¶ 16.) Specifically, Martz told Van Dyke that the Church would fire him if he did not sign the agreement. (*Id.* ¶ 16.)

After that, Van Dyke worked full-time for both the Church and Friends Media for roughly two and a half years. (*Id.* ¶ 17.) During that time, he was employed with Friends Media "as writer and director" of the film *Not Today* (the Film). (*Id.* ¶ 17.)

Van Dyke and Friends Media attempted to "negotiate a written agreement . . . for the rendition of [Van Dyke's] services as director of the film," but no agreement was ever reached, and Van Dyke never received compensation for his work as director of the Film. (*Id.* ¶ 18.)

Van Dyke alleges that he is entitled to "contingent compensation" in connection with the Film. (*Id.* ¶ 20.) He further alleges that Friends Media fraudulently increased the Film's budget from $600,000 to $1.8 million in an effort to reduce or eliminate Van Dyke's compensation on the "back end." (*Id.* ¶¶ 20, 40.)

Lions Gate is the distributor of the Film. (*Id.* ¶ 23.) Van Dyke further alleges that Lions Gate "has acquired an interest in the Film," is exploiting it, and has "entered into a joint venture agreement and/or an exclusive licensing" or distribution agreement with Friends Media, to exploit the Film. (*Id.* ¶¶ 23-24.)

After the Film's release on April 12, 2013, Van Dyke again raised the issue of his compensation as director, and he requested an accounting. (*Id.* ¶¶ 19, 22.) Shortly thereafter, the Church "unceremoniously terminated" him. (*Id.*)

On the basis of these allegations, Van Dyke asserts four claims against Lions Gate: (1) declaratory relief; (2) constructive trust; (3) accounting; and (4) quantum meruit.

**II. Legal Standard**

When evaluating a Rule 12(b)(6) motion, the Court must accept as true all allegations of material facts that are in the complaint and must construe all inferences in the light most favorable to the non-moving party. *See Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

Van Dyke alleges that he is entitled to "contingent compensation" in connection with the Film. (*Id.* ¶ 20.) He further alleges that Friends Media fraudulently increased the Film's budget from $600,000 to $1.8 million in an effort to reduce or eliminate Van Dyke's compensation on the "back end." (*Id.* ¶¶ 20, 40.)

Lions Gate is the distributor of the Film. (*Id.* ¶ 23.) Van Dyke further alleges that Lions Gate "has acquired an interest in the Film," is exploiting it, and has "entered into a joint venture agreement and/or an exclusive licensing" or distribution agreement with Friends Media, to exploit the Film. (*Id.* ¶¶ 23-24.)

After the Film's release on April 12, 2013, Van Dyke again raised the issue of his compensation as director, and he requested an accounting. (*Id.* ¶¶ 19, 22.) Shortly thereafter, the Church "unceremoniously terminated" him. (*Id.*)

On the basis of these allegations, Van Dyke asserts four claims against Lions Gate: (1) declaratory relief; (2) constructive trust; (3) accounting; and (4) quantum meruit.

**II. Legal Standard**

When evaluating a Rule 12(b)(6) motion, the Court must accept as true all allegations of material facts that are in the complaint and must construe all inferences in the light most favorable to the non-moving party. *See Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Twombly,* 550 U.S. at 556). A complaint must (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Although for the purposes of a motion to dismiss [the Court] must take all of the factual allegations in the complaint as true, [it] '[is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In considering the motion, the Court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds in Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

**III. Discussion**

Lions Gate moves to dismiss the four claims Van Dyke asserts against it. Accordingly, the Court considers the claims in turn.

**Claim 1: Declaratory Relief**

Van Dyke's first claim is for a declaration that he is the sole or joint owner of the copyright in the Film. (FAC ¶ 33.) Lions Gate raises a variety of challenges to this claim. Lions Gate first argues that Van Dyke has not, and cannot, allege any contractual relationship with Lions Gate. Van Dyke has pleaded his claims under alternative theories. First, he asserts that he was an independent contractor for Friends Media and is therefore is entitled to owner or co-owner status of the copyright in the Film. Alternatively, if it is

determined that he was an employee of Friends Media, then he alleges that he is owed for various wage-and-hour violations.

If Van Dyke is determined to be an owner of the copyright in the Film, then he *may* have a claim against Lions Gate based on Lions Gate's alleged exploitation of the copyright via its exclusive license from Friends Media. For example, if it is determined that Van Dyke is entitled to sole ownership of the copyright, he may be entitled to relief from Lions Gate, who entered into an exclusive license with an entity that was not, in fact, the owner of the Film's copyright. *See, e.g.*, 1-6 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 6.12[c][3] ("A transferee [of a copyright, such as an exclusive licensee] however has an absolute duty to account to all of the joint owners." (footnotes omitted).)

Lions Gate next argues that Van Dyke's claim is too nebulous to satisfy the Article III "case or controversy" requirement, yet this contention is unpersuasive. As explained above, Van Dyke is asserting claims against Lions Gate based on his contention that he is the sole or a co-owner of the copyright; thus, he may have recourse against Lions Gate for its exploitation of the Film under its exclusive license, if he is determined to be an owner.[1]

Third, Lions Gate argues that this claim is really a copyright infringement claim, and such a claim must fail because copyright registration is a prerequisite to a suit for infringement. Van Dyke is suing to establish, via judicial declaration, his status as owner or co-owner of the copyright. Thus, Lions Gate's argument assumes the outcome of the case—*i.e.*, that it is determined that Van Dyke is *not* an owner of the copyright.

Accordingly, the Motion is denied as to this claim.

---

[1] Lions Gate's fourth argument—that a judicial declaration would "be tantamount to a mere advisory opinion" (Mot. at 6)—is similarly meritless. To the contrary, a declaration from this Court would establish the ownership of the copyright, and, concomitantly, all the attendant rights and obligations of the parties.

**Claims 2: Constructive Trust**

Van Dyke's second claim is for a constructive trust of the Film's "revenues and profits" held by Lions Gate and Friends Media. A constructive trust is an equitable *remedy* designed to prevent unjust enrichment. *See* 13 Witkin, Summary of Cal. Law (10th), Trusts § 319. Accordingly, the Court construes this claim as one for restitution. "Under the law of restitution, an individual may be required to make restitution if he is unjustly enriched at the expense of another." *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996). "A person is enriched if he receives a benefit at another's expense." *Id.* However, "[e]ven when a person has received a benefit from another, he is required to make restitution only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it." *Id.* (internal quotation marks and citation omitted).

Van Dyke's restitution claim is predicated on his allegation that he was owed "contingent compensation" based upon the Film's profits, and that Defendants increased the Film's budget from $650,000 to $1.8 million "for the purpose of paying large amounts of money to insiders," and to mislead Van Dyke "into believing that the budget was smaller than it actually was and hence into believing his expected 'back end' earnings were greater." (FAC ¶¶ 39-40.)

Van Dyke alleges that Lions Gate is the distributor of the Film: "Upon information and belief, LIONS GATE has entered into either a joint venture agreement and/or an exclusive licensing or exclusive distribution agreement with FRIENDS MEDIA, to exploit the Film." (FAC ¶ 24.) Nothing about this allegation plausibly shows that Lions Gate had any involvement in the alleged illicit increase of the Film's budget or any control over the production of the Film. The conclusory allegation of the existence of a joint venture is insufficient under Rule 8. *See Starr*, 652 F.3d at 1216 ("to be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegation of *underlying facts*" (emphasis added)).

This claim is dismissed without prejudice.

**Claim 3: Accounting**

Van Dyke's third claim is for an accounting. An accounting is an equitable claim "for an amount which is unliquidated and unascertained and which cannot be determined without an accounting." *St. James Church of Christ Holiness v. Superior Court In & For Los Angeles Cnty.*, 135 Cal. App. 2d 352, 359 (1955).

Van Dyke has adequately pleaded a claim for accounting. As addressed above, if Van Dyke is determined to be the sole or co-owner of the copyright in the Film, then he may be entitled to an accounting from Lions Gate. For example, if he is determined to be the owner, then he would be entitled to an accounting because a copyright "transferee [such as an exclusive licensee] has an absolute duty to account to all of the joint owners" of the copyright. 1-6 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 6.12[c][3] (footnotes omitted)

The Motion is denied as to this claim.

**Claim 4: Quantum Meruit**

Van Dyke's fourth claim, for quantum meruit, is predicated upon the same allegations as his constructive trust / restitution claim—*i.e.*, that he worked as the Film's director (including spending ten weeks in India) but was not compensated. (FAC ¶ 50.) As alleged, this is duplicative of his constructive trust / restitution claim. "'Quasi-contract' is simply another way of describing the basis for the equitable remedy of restitution when an unjust enrichment has occurred. Often called quantum meruit, it applies '[w]here one obtains a benefit which he may not justly retain. . . . The quasi-contract, or contract "implied in law," is an obligation created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to his former position by return of the thing or its equivalent in money.'" *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 n.6 (2004) (citing 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts § 91, p. 122).

This claim, therefore, suffers from the same infirmity as his constructive trust / restitution claim. The only alleged connection between Lions Gate and the services Van Dyke rendered as director is the assertion that there was a "joint venture relationship between LIONS GATE and FRIENDS MEDIA," such that the services Van Dyke rendered "at the instance [*sic*] and request of" Friends Media were "also to the substantial benefit" of Lions Gate. This bare legal conclusion is not entitled to a presumption of truth and does not plausibly demonstrate that Lions Gate is liable to Van Dyke for services demanded by Friends Media.

Accordingly, this claim is dismissed without prejudice.

## IV. Conclusion

For the foregoing reasons, the Motion is GRANTED IN PART and DENIED IN PART. Van Dyke's second and fourth claims are DISMISSED WITHOUT PREJUDICE. Any amended complaint must be filed within 21 days from the date of this Order.

DATED: August 14, 2013

_____
JOSEPHINE STATON TUCKER
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE